Brian **ANDREAS**, an individual; Story-people, Inc., an Iowa corporation; and Storypeople Graphics, Inc., an Iowa corporation, Plaintiffs,

v.

**VOLKSWAGEN OF AMERICA, INC.** d/b/a Audi of America, Inc., a New Jersey corporation, and McKinney & Silver, Inc., a Delaware corporation, Defendants.

No. C00–2021.

United States District Court, N.D. Iowa, Eastern Division.

Nov. 26, 2001.

J. Michael Weston, Matthew J. Krigbaum, Lisa Stephenson, Moyer & Bergman, PLC, Cedar Rapids, IA, S. Jerome Mandel, Lilly Lewis, Mandel & Norwood, Santa Monica, CA, for Brian Andreas, an individual, Storypeople, Inc., an Iowa Corporation, Graphics, Inc., an Iowa Corporation, plaintiffs.

Edmund J. Sease, Jeffrey D. Harty, Zarley, McKee, Thomte, Voorhees & Sease, PLC, Des Moines, IA, Howard R. Weingrad, Sara L. Edelman, Davis & Gilbert, LLP, New York City, for Volkswagen of America, Inc., a New Jersey Corporation dba Audi of America Inc., McKinney & Silver, Inc., a Delaware Corporation, defendants.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the defendants' November 13, 2001, motion in limine regarding damages (docket number 62). The court held a hearing on this motion on November 23, 2001. The motion in limine is granted.

This is an action for copyright infringement. Plaintiff Brian Andreas is an artist and storyteller from Decorah, Iowa. His works are disseminated in the form of prints, sculptures, and are compiled in books. He claims that he created his work "Angels of Mercy" in 1993 and first sold it in print form in 1994. "Angels of Mercy" is a depiction of an angel accompanied by the phrase "Some people don't know that there are angels whose only job is to make sure you don't get too comfortable & fall asleep & miss your life."

In 1999, Audi of America ran a commercial between May and October to promote its new Audi TT Coupe. The commercial is referred to in this case as the "wake-up call." The 30 second commercial depicts the Audi TT Coupe in a garden among neoclassical statues. It is accompanied by music composed by Bobby McFerrin. The only words spoken as a voice-over in the Audi commercial state the following; "I think I just had a wake-up call, and it was disguised as a car, and it was screaming at me not to get too comfortable and fall asleep and miss my life." It focuses on the Audi TT when it states "disguised as *a* car and *it* was screaming at me." It then focuses twice on the TT emblem on the back of the car. The trailer shows "Audi The New TT." No other car is shown. Other Audi models had their own commercials that ran throughout the same period.

In the damages phase of his case, plaintiff seeks to be compensated with actual damages calculated as a reasonable royalty for the use of his words. He also seeks to recover the defendant's profits attributable to the alleged infringement. Defendant, in its motion in limine, seeks to preclude the plaintiff from introducing evidence or arguing to the jury that he is entitled to recover Audi profits earned from models other than the TT in 1999 and profits from any of its models sold in the year 2000. As the motion pertains to plaintiff's claim for actual damages, it seeks to prohibit the plaintiff from claiming that a reasonable royalty under these circumstances would be 10% of Audi's American sales.

### Defendant's Profits

Pursuant to 17 U.S.C. § 504(b), The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are

not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyright work.

The typical copyright infringement case plaintiff bears only the minimal burden of showing (1) infringement, and (2) defendant's gross revenues. *Rainey v. Wayne State University,* 26 F.Supp.2d 963 (E.D.Mich.1998), once this prima facie showing is met, a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement arises, and the burden then shifts to the defendant to demonstrate what portion of its revenues represent profits, and what portion of its profits are not traceable to the infringement. *Id.* at 971–72. A court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 517 (9th Cir.1985).

■ This is true in cases where the defendant directly infringes by performing or selling copyrighted material such as *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505 (9th Cir.1985).[1] However, courts have not strictly applied that standard where the copyright holder seeks to recover indirect profits, *Rainey, supra,* at 972, as is the case here. That is, the plaintiff is seeking profits from the sale of cars, not the sale of his copyrighted material. In such cases, courts have required that plaintiff demonstrate a connection between defendant's gross revenues and the infringement itself. *Rainey, supra,* at 972. Thus, where an advertise-

ment for the international retailer The Gap infringed on a copyright by using the plaintiff's copyrighted eye wear in an advertisement, the Court of Appeals defined the term "gross revenue" in § 504(b) to mean revenue reasonably related to the infringement, not unrelated revenues. Thus, the overall revenue of The Gap, Inc. (the holding company for The Gap stores and other subsidiaries) had no reasonable relation to the act of alleged infringement. Upon remand, the plaintiff was required to limit his claim for gross revenues to those from The Gap label stores, and "perhaps" just its eye wear and accessories sales. *Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir.2001).

> [W]e think the district court was correct in ruling that Davis failed to discharge his burden by submitting The Gap, Inc.'s gross revenue of 1.668 billion—revenue derived in part from sales under other labels within The Gap, Inc.'s corporate family that were in no way promoted by the advertisement, not to mention sales under the "Gap" label of jeans, khaki's, shirts, underwear, cosmetics, children's clothing, and infant wear.

Similarly, in *Estate of Vane v. The Fair, Inc.,* the defendant, a chain of retail stores, hired the plaintiff to prepare slides showing its merchandise with the stated purpose of using the slides in printed advertising mailed to its customers. This license was breached when the defendant used some of these slides in its television commercials. The plaintiff presented a sophisticated multiple regression analysis through a professor of marketing at the University of Houston's College of Business Administration in an effort to show the profits attributable to the infringement. The model purported to consider

---

1. The defendant performed plaintiff's copyrighted music in a show at its Las Vegas casino. The plaintiff recovered profits from the show and also received indirect profits from the operation of the casino that benefitted from the show.

such things as seasonable sales trends, a general downward economic trend in Houston, and the "carryover effect" of advertising. However, because the analysis did not consider the degree to which the infringement contributed to the overall success of the commercial, the Court of Appeals found that the district court properly rejected his attempt to show revenues attributable to the infringement as speculative. *Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 189 (5th Cir.1988).

The question presented by the motion in limine is whether the plaintiff's claim for profits on the sales of all American Audi cars in 1999 and 2000 is too speculative. That is, can the plaintiff prove that any infringement found in the Audi TT commercial is reasonably related to revenues gained from the sale of all Audi models.

The plaintiff has no expert who will attempt to prove a causal relationship between this commercial and the sale of any vehicles. The parties seem to agree that a primary objective in automobile advertising is to create traffic through automobile dealerships. However, the plaintiff will not attempt to prove that the commercial in question increased traffic or even maintained it at a particular level. The plaintiff will not attempt to prove that there is any particular relationship between the amount of traffic and the amount of sales (although we all intuitively believe that there is some direct relationship). Instead, the plaintiff relies on testimony from Audi's advertising manager, Mary Ann Wilson, who testified generally that the object of advertising is to increase traffic at the dealerships and create and maintain brand recognition (Mary Ann Wilson Depo. pp. 67–70). From this, the plaintiff contends that gross revenue from all Audi sales is at issue in this case despite the fact that only the Audi TT is displayed in the commercial.

The plaintiff also contends that the disproportionate amount of Audi's $90 million advertising budget spent on the "launch" of the new Audi TT Coupe ($26 million) shows that Audi was not advertising the TT specifically but rather was promoting the image of Audi automobiles generally.

The plaintiff is left with his theory that automobile advertising is important to the sale of automobiles, that Audi spent $90 million on advertising in 1999 in America and sold approximately 65,000 cars, 5,000 of which were Audi TTs. Upon the premise that Audi does not spend $90 million without an expectation of something in return, the plaintiff claims that advertising sells cars and that it is now the defendant's burden to prove how Audi's ad did not cause over $2 billion in Audi sales. This claim is simply too speculative to go forward.

### Reasonable Royalty

The defendant also seeks to preclude the plaintiff from claiming that a reasonable royalty in this case would equal 10% of Audi's sales. In his deposition, the plaintiff identified instances in which he licensed his works to charities and individuals. He has consistently licensed his copyrights to his company Storypeople, Inc. at the rate of 10% of sales. Similarly, he has licensed his copyrights to charities, charging the charity a 10% royalty and then donating the royalty back to the charity. He has not licensed his work for commercial profit for others and testified that he is philosophically opposed to doing this.

In determining a reasonable royalty, the question is not what the owner would have charged, but rather what is the fair market value. *Davis, supra,* at 166. At oral argument, the plaintiff conceded that the jury must determine the fair market value of the license in question and stated that he would not request a royalty based on 10% of sales. The defendant's motion in limine is, therefore, moot.

Upon the foregoing,

IT IS ORDERED.

The defendants' November 13, 2001, motion in limine regarding damages (docket number 62) is granted. The plaintiff may not offer evidence of Audi's 1999 sales of models other than the TT and may not offer year 2000 sales of any Audi products.